UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| Irvin Randal Karr, | } | Case No. 20-40655-JJR-7 |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| Rocco J. Leo, as Trustee of the | } | |
| Bankruptcy Estate of Irvin | } | |
| Randal Karr, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | AP No. 20-40025-JJR |
| | } | |
| Deutsche Bank National Trust | } | |
| Company, as Trustee under the | } | |
| Pooling and Service Agreement | } | |
| dated as of March 1, 2006, GSRPM | } | |
| Mortgage Loan Trust 2006-1; and | } | |
| Dortha Karr, | } | |
| | } | |
| Defendants. | } | |

| | | |
|---|---|---|
| Deutsche Bank National Trust | } | |
| Company, as Trustee under the | } | |
| Pooling and Service Agreement | } | |
| dated as of March 1, 2006, GSRPM | } | |
| Mortgage Loan Trust 2006-1, | } | |
| | } | AP No. 20-40029-JJR |
| Plaintiff, | } | (removal of CV-2016-900016.00 |
| | } | from the Circuit Court of Marshall |
| v. | } | County, Alabama) |
| | } | |
| Dortha Karr, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

I – Introduction and Background

On April 13, 2020, Irvin Randal Karr (the "Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.* and herein, the "Code"). On his schedule of assets (Schedule A/B: Property; Bk Doc. 1, p.10) he stated he owned no real property. However, the chapter 7 trustee (the "Trustee") discovered a recorded warranty deed executed in the year 2000 that purported to convey title to a residence and small acreage located at 785 Hustleville Road, Albertville, Marshall County, Alabama (the "Property") to the Debtor and his wife, Dortha Karr ("Dortha" and together with the Debtor, the "Karrs"). The Trustee also discovered a recorded foreclosure deed that recited the Property had been acquired in 2015 at a mortgage foreclosure sale by Deutsche Bank National Trust Company, as Trustee under the Pooling and Service Agreement dated as of March 1, 2006, GSRPM Mortgage Loan Trust 2006-1 (the "Bank"). Although the warranty deed conveyed the Property to both the Karrs, the foreclosure deed stated that the foreclosed mortgage was executed only by Dortha and did not mention the Debtor.

The Trustee commenced Adversary Proceeding No. 20-40025 (the "Trustee AP") by filing his complaint (Trustee AP Doc. 1) against the Bank and Dortha as defendants and asked this court to (i) declare the respective right, title, and interest of the parties to the Property; (ii) authorize a sale for division pursuant to Code § 363(h);[1] and (iii) order a turnover of the Property pursuant to

---

[1] Code § 363(h) provides that:

. . . [T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

    (1) partition in kind of such property among the estate and such co-owners is impracticable;

Case 20-40025-JJR   Doc 41   Filed 01/13/21   Entered 01/13/21 08:47:09   Desc Main
Document     Page 2 of 23

Code § 542(a)[2] to facilitate its sale. The Bank and Dortha answered the Trustee's complaint, and the Bank filed counterclaims against the Trustee and crossclaims against Dortha. (Trustee AP Docs. 11, 25.) The Trustee filed a motion seeking dismissal of the Bank's counterclaims and crossclaims, and Dortha filed a similar motion seeking dismissal of the crossclaims. (Trustee AP Docs. 22, 26.)

Adversary Proceeding No. 20-40029 (the "Bank AP" and together with the Trustee AP, the "APs") originated as a lawsuit filed by the Bank on January 20, 2016 (the "2016 Lawsuit") against Dortha as the sole defendant, in the Circuit Court of Marshall County, Alabama (the "Circuit Court"), seeking possession of the Property following the foreclosure sale mentioned above. The 2016 Lawsuit was removed by the Bank to this bankruptcy court whereupon it became an adversary proceeding in the Debtor's chapter 7 case. Before the removal, the Bank's claims against Dortha, and its proposed amended complaint that would have added the Debtor as a party-defendant, were dismissed by the Circuit Court. However, Dortha had filed a counterclaim against the Bank and her counterclaim was the only remaining claim by any party in the 2016 Lawsuit

---

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; [and]

(3) the benefit to the estate of a sale of such property free of the intertest of co-owners outweighs the detriment, if any, to such co-owners[.] . . .

[2] Code § 542(a) provides that:

. . . [A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

3

when it was removed.[3]  After the removal, Dortha filed a motion seeking remand or abstention. (Bank AP Doc. 17.)

The primary focus of this opinion will be Dortha's motion filed in the Bank AP seeking remand or abstention, and the Trustee's and Dortha's motions filed in the Trustee AP seeking dismissal of the Bank's counterclaims and crossclaims.

II – Facts and Circuit Court Lawsuits

The common question underlying both APs is who, under Alabama law, owns the Property or an interest therein.  There are three candidates: (1) The Trustee contends the Debtor, and hence the bankruptcy estate, owns an undivided one-half interest in the Property; (2) Dortha claims to be the sole owner, and the Debtor supports her claim; and (3) the Bank asserts it is the sole owner of the Property by virtue of the mortgage foreclosure sale.  While the common question is simply stated, the facts the court must consider in answering that question are complex and convoluted as a result of—to be blunt—the careless and incompetent preparation of documents pertaining to the Property's title.

Copies of deeds and mortgages, pleadings and orders, and other documents related to the Property and its title and from the parties' Circuit Court litigation,[4] were attached to the Trustee

---

[3] After the Debtor filed his bankruptcy petition, but before removal of the 2016 Lawsuit, the Bank filed a Motion to Reconsider Order Dismissing Claims with the Circuit Court. Apparently that motion is pending.  To the extent the Bank's motion seeks to add the Debtor as a party to the 2016 Lawsuit, it is stayed by Code § 362(a).

[4] Additional documents pertaining to the Property's title, the parties' transactions, and their litigation in the Circuit Court were attached to some of the other pleadings filed in the APs.  None of the parties have questioned the authenticity of the pleadings and documents attached to the Trustee AP complaint or those filed by other parties, although the parties have different opinions of how these documents should be construed and their effect on the Property's title.  Nonetheless, the Court has made no ruling on the authenticity of any documents mentioned in this opinion.

Case 20-40025-JJR    Doc 41    Filed 01/13/21    Entered 01/13/21 08:47:09    Desc Main
Document    Page 4 of 23

AP complaint. For the most part, the deeds, mortgages, and other documents affecting title appeared on their face to have been recorded in the Office of the Judge of Probate of Marshall County, Alabama, which would be the proper recording office for instruments pertaining to real property located in Marshall County.[5] As alluded to above, deciphering the status of the Property's title is complicated by the scrivener's errors, omissions, ambiguities, and blatant errors found in some of the documents.[6]

Chronologically, the first document for consideration is a warranty deed (the "Original Deed") dated November 10, 2000, signed by Shane and Susan Wilks (the "Wilks"), purporting to convey the Property to the Karrs.[7] (Trustee AP Doc. 1, Ex. B.) The Original Deed was on a form frequently used to convey Alabama homestead property, jointly with rights of survivorship, to married couples,[8] and on its face it appeared to have been duly executed, acknowledged before a notary public, and recorded. However, as discussed below, a problem with the description of the Property was later discovered.

On March 1, 2001, the Wilks executed another deed that purported to convey the Property solely to Dortha.[9] This deed—designated a corrective warranty deed (the "First Corrective

---

[5] ALA. CODE §§ 35-4-51, 4-62 and 4-63 (1975).

[6] None of the attorneys representing parties in the APs were involved in the preparation of these documents.

[7] The Karrs executed a $100,000 purchase-money mortgage to the Wilks, which was later released and is not at issue.

[8] Deeds similar to this one may be used to convey property, both homestead and non-homestead, to two or more grantees who are not necessarily married or even related; e.g., parent and child or business partners.

[9] The First Corrective Deed itself is not dated, although the notary's acknowledgement stated it was signed March 1, 2001. (Trustee's AP Doc. 1, Ex. D.)

Case 20-40025-JJR   Doc 41   Filed 01/13/21   Entered 01/13/21 08:47:09   Desc Main
Document     Page 5 of 23

Deed")—named Dortha as the only grantee. At the top of its first page, the First Corrective Deed recited, "This corrective deed is being recorded to take the grantee's spouse's name off the title. This corrective deed is to replace the original deed which was recorded November 14, 2000 in Book 2146 at page 217." The First Corrective Deed was executed only by the Wilks although at that time they were not the record owners of the Property; record title remained vested jointly in the Karrs by virtue of the Original Deed.[10] The incorrect legal description of the Property apparently had not yet been discovered and was not addressed in the First Corrective Deed.

On December 31, 2002, both the Karrs executed a Mortgage (the "2002 Mortgage", Trustee AP Doc. 1, Ex. E) encumbering the Property in favor of Ameriquest Mortgage Company ("Ameriquest") to secure a $240,000 loan. The text of the 2002 Mortgage and the notary's acknowledgement identified the Karrs as husband and wife. The 2002 Mortgage was later released, but on March 23, 2004, Dortha made another mortgage (the "2004 Mortgage", Trustee AP Doc. 1, Ex. F), again encumbering the Property in favor of Ameriquest, this time to secure a $317,625 loan.[11] Unlike the 2002 Mortgage, the text and notary's acknowledgement of the 2004 Mortgage identified Dortha as the sole mortgagor and neither mentioned her marital status.[12]

---

[10] Apparently the intent was to vest title in Dortha as the sole owner, although for what reason we do not know. Regardless, the Corrective Deed should have been executed by the Wilks *and* the Karrs. *See Gallups v. Kent*, 953 So. 2d 393 (Ala. 2006) (grantor cannot, via corrective deed, unilaterally undo the transfer of an interest under the original deed). Title could have been conveyed solely to Dortha if both Karrs, as grantors, had executed a deed naming only Dortha as the grantee; however, unlike the First Corrective Deed, recording (privilege) tax would have had to be paid to record a deed from the Karrs to Dortha; such taxes are not required to record a corrective deed. ALA. CODE § 40-22-1(b)(3), (c) (1975).

[11] The Bank alleged in its answer to the Trustee AP complaint that a portion of the loan proceeds from the 2004 Mortgage were used to refinance the 2002 Mortgage, which appeared likely because the release of the 2002 Mortgage was executed by Ameriquest on April 16, 2004 and recorded soon thereafter. (Trustee AP Doc. 1, Ex. G.)

[12] ALABAMA CODE § 35-4-73 (1975) provides that "(a) No deed, contract, or other conveyance of land or any interest therein, whether legal or equitable, shall be accepted for record

However, in addition to Dortha's signature, a second signature is on the 2004 Mortgage, and that second signature appears to be that of the Debtor, although neither the text of the 2004 Mortgage nor the notary's acknowledgement mentioned his name.[13]

The 2004 Mortgage is a fill-in-the-blank form and is identified at the bottom of its first page as an "ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT." Its third page provided space to insert a description of the mortgaged property, or a reference to an attached exhibit or schedule containing the description. However, the scrivener failed to either insert a legal description or mention that a schedule or exhibit was attached.[14] Although it was not identified or mentioned in the body of the form, Schedule "A" containing a metes-and-bounds description of the Property was attached to the 2004 Mortgage. Following the description on Schedule "A" is the statement, "SOURCE OF TITLE; BOOK 2188 PAGE 52 (RECORDED 3/15/01)" which corresponds with the recording information stamped on the First Corrective Deed

---

by the probate judge unless it contains a recitation of the marital status of an individual grantor or vendor . . . . (b) A probate judge shall not be liable in damages or for a penalty for an error or mistake in the performance of his duties under this section if committed in good faith."

[13] "No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgements of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed or other conveyance, which certificate must be substantially in the form of acknowledgement for individuals prescribed by Section 35-4-29." ALA. CODE § 6-10-3 (1975). Although the Debtor's signature on the 2004 Mortgage is not legible, it appears identical to his signature acknowledged before a notary public on the Loan Modification discussed *infra.* A notation on the penultimate page of the 2004 Mortgage stated it was prepared by Yvette DeFrance, 10600 White Rock Road, Suite 200-10, Rancho Cordova, CA 95670.

[14] The space for the Property's description did identify its street address and tax Parcel ID number.

signed by the Wilks. Schedule "A" contained the same (apparently erroneous) description as in the Original Deed and First Corrective Deed.

Attached to the Bank's Answer and Counterclaim/Cross-Claim (Trustee AP Doc. 11) filed in the Trustee AP, was a copy of a Loan Modification Agreement dated July 19, 2006 (The "Modification"). The initial paragraph of the Modification stated it was between Dortha as "Borrower" and the Bank as "Lender," however it was signed and acknowledged before a notary public by both Karrs. The copy did not indicate the Modification had been recorded, and some of the final provisions at the bottom of the first page or top of the last page were missing. Regardless, in the Modification, the Karrs and the Bank agreed upon the amount of unpaid principal then owing under the 2004 Mortgage, including amounts loaned and capitalized interest, the interest rate, monthly installments, and maturity. The Karrs acknowledged their signatures on the Modification before a notary public on August 15, 2006, and the signature of the representative signing on behalf of the Bank was acknowledged on November 16, 2006. Although it has no bearing on the conclusions reached in this opinion, it is likely that the Modification allowed the Karrs to capitalize (convert to principal) delinquent interest and re-amortize the principal to cure an outstanding default.

On November 20, 2012, Ocwen Loan Servicing, LLC ("Ocwen") filed a lawsuit in the Circuit Court (the "2012 Lawsuit"; Bank AP Doc. 1, Ex. 1, p. 299), against the Karrs and Wilks as defendants (*Id.* p. 377). According to a footnote in Ocwen's complaint, it claimed to be the "ultimate assignee of Ameriquest," the original mortgagee in the 2004 Mortgage. The complaint alleged that the 2004 Mortgage contained "inadvertent [s]crivener's errors in the legal description

Case 20-40025-JJR    Doc 41    Filed 01/13/21    Entered 01/13/21 08:47:09    Desc Main
Document      Page 8 of 23

of the Subject Property."[15]  Count I of Ocwen's complaint asked the court to reform the Original

Deed and 2004 Mortgage to reflect the correct legal description.  Counts II through VI asserted

claims for a constructive trust, an equitable mortgage, an equitable lien, foreclosure-judicial sale,

and money had and received.

On February 18, 2015, the Circuit Court entered an Order of Reformation in the 2012

Lawsuit (the "Reformation Order", Trustee AP Doc. 1, Ex. K), which provided, in pertinent part:

1.  The [2004] Mortgage which reflects it was entered into by Dortha and Randy
    Karr to Ameriquest Mortgage Company on March 23, 2004, and recorded in
    RPB Book 2908, Page 30, in the Probate Judge's Office of Marshall County,
    Alabama, contains certain scrivener's errors in the legal description attached
    thereto as "Schedule A." The parties to this litigation all agree there is a
    scrivener's error in said description of the mortgage.
2.  By agreement, it is ordered the [2004] Mortgage is hereby reformed to reflect
    the correct legal description of the property listed therein by deleting "Schedule
    A" and replacing it with the "Schedule A" set forth below, to-wit: [followed by
    a metes-and-bounds description].
3.  By consenting to the reformation of the mortgage to reflect [the] correct legal
    description of the property, the KARR Defendants do not waive or concede any
    defense they may have to the validity of the mortgage in the event of future
    litigation relating to the mortgage.
4.  This judgment shall be filed of record in the office of the Marshall County
    Probate Judge.
5.  Except as specifically amended by this Order, the Mortgage remains
    unchanged.
6.  All other claims for alternate relief are dismissed without prejudice. . . .

The Reformation Order was recorded in the Marshall County Probate Office on March 27,

2015.  The Circuit Court did not expressly reform the Property's description in the Original Deed

to match that in the reformed 2004 Mortgage and did not address the First Corrective Deed signed

only by the Wilks.  However, before the Reformation Order was entered, another corrective

---

[15]  Ocwen also alleged in its complaint that "[o]n or about March 4, 2001, a Corrective
Warranty Deed was filed purporting to remove Randy Karr's name as grantee from the [Original]
Deed and containing the same erroneous legal description, *but is void* as Randy Karr did not join
in the deed." (Bank AP Doc. 1, Ex. 1, p. 379) (emphasis added).

warranty deed (the "Second Corrective Deed", Trustee AP Doc. 1, Ex. I) had been executed by the Wilks as grantors to the Karrs as joint tenants with rights of survivorship.[16] The Second Corrective Deed was virtually identical to the Original Deed except it contained the reformed legal description and was dated *effective* November 10, 2000—the date of the Original Deed—but acknowledged before a notary public on January 24, 2013. The Second Corrective Deed was recorded in Marshall County on July 23, 2013.[17]

On November 16, 2015, the Bank recorded a Foreclosure Deed (the "Foreclosure Deed", Trustee AP Doc. 1, Ex. L) which recited that a foreclosure sale was held on October 8, 2015 whereby the 2004 Mortgage was foreclosed, and the Bank was the purchaser with a bid of $614,386.36 that was offered as a credit on the secured indebtedness.[18] The Foreclosure Deed contained the corrected Property description as provided in the Reformation Order, and described the 2004 Mortgage as having been executed only by Dortha, with no mention of her marital status or the Debtor.[19]

---

[16] The Wilks were voluntarily dismissed by Ocwen with prejudice from the 2012 Lawsuit, immediately following, and no doubt because of their execution of the Second Corrective Deed. A comparison of the Property's description in the Original Deed and the 2004 Mortgage with the corrected description in the Reformation Order and Second Corrective Deed revealed several variances, including the overall size of the Property. There was no evidence explaining how those variances occurred or, for that matter, whether they were errors or accurately described another parcel of land but not the one the Wilkes intended to convey to the Karrs, or at least to Dortha.

[17] For whatever reason, perhaps by mistake, the Second Corrective Deed was first recorded with the Jefferson County, Alabama Probate Office on February 4, 2013.

[18] The 2004 Mortgage stated that it originally secured an indebtedness of $317,625.00.

[19] The Foreclosure Deed recited that that the 2004 Mortgage was originally made by Dortha in favor of Ameriquest, and subsequently was assigned to the Bank by an assignment recorded in Book 4422, Page 106, presumably in the Marshall County Probate Office. There was no mention of Ocwen or any intervening assignee, which does not necessarily indicate there were no previous assignees. At a hearing held on November 11, 2020, counsel for Dortha questioned whether the Bank could show it was the current assignee of the 2004 Mortgage and stated that during the 2012

On January 20, 2016, the Bank filed the 2016 Lawsuit, claiming it was the owner of the Property by virtue of the Foreclosure Deed and that it had served Dortha with written demand for possession but she refused to vacate the Property. The Bank demanded possession and an order declaring that Dortha had forfeited her statutory right of redemption by failing to timely vacate the Property.[20] Dortha answered the Bank's complaint claiming the 2004 Mortgage was void as a matter of law and pled "*res adjudicata*" citing the 2012 Lawsuit. (Bank AP Doc. 1, Ex. 1, p. 6.) Dortha alleged that when she executed the 2004 Mortgage she was married to the Debtor, and although the Property was their homestead, he did not join in the execution of the 2004 Mortgage, and therefore it was invalid. She counterclaimed for outrage and slander of title and demanded a judgment against the Bank "in an amount to be determined by a jury including attorneys fees, costs of this action, and punitive damages."

On March 25, 2016, the Bank answered Dortha's counterclaim, denying her material allegations (Bank AP Doc. 1, Ex. 1, p. 14), and on September 5, 2017 filed its First Amended Complaint in which it referred to the Debtor as a defendant, but apparently he was never served and never formally added as a party-defendant. Thereafter, on February 12, 2019, the Bank filed

---

Lawsuit the plaintiff, Ocwen, could not prove it was the assignee of the 2004 Mortgage. There has been no proof offered to challenge the validity of an assignment of the 2004 Mortgage to Ocwen or to the Bank.

[20] When the 2004 Mortgage was foreclosed on October 8, 2015, mortgagors in Alabama were allowed a one-year statutory right of redemption following a foreclosure sale, which could be exercised by paying the purchase price paid at the sale, or if the mortgagee was the successful purchaser, by paying the outstanding mortgage debt, plus interest and certain expenses. ALA. CODE §§ 6-5-248, 5-253 (1975). The redemption period for homestead property was later shortened to six months effective January 1, 2016, for mortgages entered on or after that date. 2015 Ala. Acts 79 p. 283, § 1. But in any case, that right is lost if the mortgagor, or someone holding possession under the mortgagor, fails to surrender possession of the foreclosed property to the purchaser at the foreclosure sale, or to the purchaser's transferee, within 10 days after written demand is made for possession. ALA. CODE § 6-5-251 (1975).

a Motion for Leave to File Second Amended Complaint in which it proposed to add the Debtor as an additional defendant and sought an order ejecting him from the Property. (Bank AP Doc. 1, Ex. 1, p. 221.) On February 21, 2019, the Karrs responded by filing a Motion to Strike the Bank's motion for leave to amend. (Bank AP Doc. 1, Ex. 1, p. 236.) The Karrs' motion alleged that the Bank's attempt to amend its complaint came too late because discovery was substantially complete; that the Debtor was not a proper party because he was not a party to the deed or mortgage which were the subject of the litigation; that the 2004 Mortgage was void because the Property was the Karrs' homestead; that the Debtor's right to possession was or should have been litigated in the 2012 Lawsuit filed by Ocwen; that the 2012 Lawsuit established that the Bank had no interest in the Property or the 2004 Mortgage because Ocwen held itself out as the ultimate assignee of the 2004 Mortgage; and that the Bank had no standing to prosecute an ejectment action against the Debtor.

On April 11, 2019, the Circuit Court granted the Karrs' motion to strike, ruling, "The Court notes that all claims in this case were previously litigated in [the 2012 Lawsuit]. Said case . . . involved the same real estate." (Bank AP Doc. 1, Ex. 1, p. 264.) The Bank filed a motion (Bank AP Doc. 1, Ex. 1, p. 273) asking the Circuit Court to reconsider the dismissal of the Bank's claims, arguing that res judicata did not apply because the ejectment claim could not have been brought in the earlier 2012 Lawsuit—the 2004 Mortgage had not been foreclosed and there was no demand for possession, and claims other than reformation of the 2004 Mortgage were dismissed without prejudice, and by statute, Alabama permits more than one ejectment judgment.

The Circuit Court entered an Order on September 4, 2019[21] denying the Bank's motion to reconsider, and gave the following rationale for having dismissed the Bank's claims:

> . . . It is noted that Ocwen . . . represented itself to the Court in the [2012 Lawsuit] to be the ultimate assignee of the [2004 Mortgage] which is the subject matter of the instant action. Upon its *sua sponte* review of [the 2012 Lawsuit] the Court recognizes that the asserted claims of Ocwen . . . are of such degree of similarity against [Dortha] as the claims asserted herein by the [Bank] that the [Bank's] claims against [Dortha] are hereby barred by operation of *res judicata*. This Court finds that despite dismissal of the substantially similar claims without prejudice, there exists a judgment on the merits in the [2012 Lawsuit] in which rights under the [2004 Mortgage] were represented as belonging to the ultimate assignee, [Ocwen]. As the currently plead claims were presented in the previous action, and could have been adjudicated in said action, said claims are now barred. Accordingly, [the Bank's] Motion to Reconsider this Court's Order dismissing this action, is hereby DENIED.[22]

The Bank appealed the Circuit Court's order to the Supreme Court of Alabama. On April 17, 2020, after concluding the Circuit Court's order of dismissal was not a final judgment, the supreme court dismissed the appeal because Dortha's counterclaim had not been adjudicated. (Bank AP Doc. 1, Ex. 1, p. 442.)

## III – Bank's Counterclaim/Cross-claim

The complaint filed in the Trustee AP (Trustee AP Doc. 1) named the Bank and Dortha as defendants because of their recorded interests in the Property. As mentioned, the Trustee asked the court to declare the parties' respective right, title, and interest in the Property, and to authorize a sale for division pursuant to Code § 363(h) and also to order possession of the Property be turned

---

[21] The order was dated August 27, 2019 and time-stamped by the Circuit Court clerk as filed September 4, 2019. (Bank AP Doc. 1, Ex. 1, p. 335.)

[22] The Circuit Court did not dismiss "this action"—i.e., the 2016 Lawsuit—but only dismissed the Bank's claims; Dortha's counterclaim against the Bank was not dismissed.

over to him pursuant to Code § 542(a) to facilitate the sale. The Trustee claimed that by virtue of the Original Deed and Second Corrective Deed, a one-half undivided interest in the Property was vested in the Debtor, and that interest was now property of the bankruptcy estate under Code § 541(a). The Trustee stressed that "[t]here is no instrument executed divesting [the Debtor] of his interest in the Property. . . . [And] [t]here is no instrument executed by the Debtor giving a mortgage in his interest in the Property as would be required by Code of Alabama (1975) Section 6-10-3."[23] The Trustee's claim was made only in respect to the half interest allegedly owned by the Debtor; the Trustee made no claim regarding the other half interest he concedes is owned by either Dortha or the Bank.

In its Answer and Counterclaim/Cross-Claim (Trustee AP Doc. 11), the Bank did not dispute the material factual allegations of the Trustee's complaint but made affirmative claims in a four-count counterclaim and crossclaim. The relief sought in Counts I and II would adversely affect both the Trustee's and Dortha's claims to the Property and are, therefore, considered by the court as counterclaims directed at the Trustee and crossclaims directed at Dortha. Counts III, IV, and V are strictly crossclaims directed at Dortha.

Count I, entitled "Request for Declaratory and Equitable Relief," like the Trustee's complaint, seeks a declaration of who owns the Property or an interest therein, but goes further. It asks that if Dortha is determined to have been the sole owner when she executed the 2004 Mortgage, that the court declare the mortgage was valid and its foreclosure transferred title to the Bank, or in the alternative if the Debtor is found to have an interest in the Property, declare that he ratified the 2004 Mortgage. Presumably, if the court finds the 2004 Mortgage or its foreclosure invalid, Court I, in the alternative, asks the court to find that the Bank "holds an enforceable lien

---

[23] *See* n. 13, *supra.*

or mortgage on the entirety of the Property in equity through the doctrines of equitable subrogation, equitable mortgage, equitable lien and/or constructive trust." In Count II, entitled "Reformation," the Bank asks the court to reform the title documents, including the 2004 Mortgage, to reflect the declaratory and equitable relief requested in Count I.

In Count III the Bank seeks the ejectment of the Karrs from the Property; Count IV asks for a judicial foreclosure of the 2004 Mortgage (apparently if the court should determine the earlier foreclosure was not valid); and Count V seeks a money judgement against Dortha for the amount due on the promissory note she signed in connection with the 2004 Mortgage.

Dortha answered the Trustee's complaint (Trustee AP Doc. 25) and, like the Bank, did not seriously dispute the material factual allegations, but she raised several affirmative defenses and denied the validity of the 2004 Mortgage and its foreclosure, and claimed that she, to the exclusion of the Bank and the Debtor, was the sole owner of the Property.


IV – Bankruptcy Court Jurisdiction

In addition to her answer, Dortha filed a motion to dismiss the Bank's crossclaims (Trustee AP Doc. 26) based on several grounds, including that this court lacked subject matter jurisdiction over the crossclaims. And the Trustee also filed a motion to dismiss the Bank's counterclaims and crossclaims (Trustee AP Doc. 22), agreeing with Dortha that this court lacked subject matter jurisdiction over those claims. At least in part, the court agrees with the Trustee and Dortha.[24]

---

[24] Rule 12(h)(3) of the Fed. R. Civ. P., made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012, states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." (emphasis added).

Case 20-40025-JJR    Doc 41    Filed 01/13/21    Entered 01/13/21 08:47:09    Desc Main
Document    Page 15 of 23

The jurisdiction of bankruptcy courts is limited to cases under title 11 (i.e., bankruptcy cases), core proceedings arising under the Code or in a bankruptcy case, and proceedings related to a bankruptcy case. 28 U.S.C. § 157(b)(1). For the most part, core proceedings are defined in § 157(b)(2), but there is no statutory definition of what constitutes a proceeding "related to" a bankruptcy case. Nonetheless, the Eleventh Circuit's longstanding test for determining "related-to" jurisdiction requires the bankruptcy court to consider "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990).

The threshold question that must be answered in the Trustee AP is whether the estate owns a half interest in the Property. If the estate owns a half interest in the Property—the Trustee makes no claim beyond the half interest allegedly conveyed to the Debtor—but that half interest is determined to be inferior to the Bank's claim, then the Trustee must either abandon the half interest or, if there is value exceeding the Bank's claim, sell the estate's interest, use the proceeds to satisfy the Bank's claim and the Debtor's homestead exemption,[25] and retain the excess for the estate. But under any of these scenarios, with one possible exception, the Bank's counterclaims and crossclaims will have no effect on the estate. The exception arises if the Debtor is found to own a half interest, but the 2004 Mortgage and its foreclosure are determined to be invalid as to the Debtor's interest. Under that exception, the Bank claims the Debtor's interest should, nonetheless, be encumbered by an equitable mortgage or lien in its favor. Thus, other than that one exception, the court has no subject matter jurisdiction over the Bank's counterclaims and crossclaims, and

---

[25] The Debtor would be entitled to his homestead exemption under Code § 522 before any distribution to creditors.

they are due to be dismissed without prejudice. However, to the extent Counts I and II can be interpreted as defenses to the Trustee's claims, they will be so treated.[26]

V- Removal and Remand/Abstention

On September 10, 2020, the Bank filed a Notice of Removal (Bank AP Doc. 1) with respect to the 2016 Lawsuit pursuant to 28 U.S.C. §§ 1334 and 1452 and Fed. R. Bankr. P. 9027.[27] Rule 9027(a)(2) requires notice of removal to be filed within "(A) 90 days after the order for relief in the case . . . [or] (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code [whichever is longer] . . . ." Dortha filed a Motion to Remand or, in the Alternative, Abstain (Bank AP Doc. 17) arguing the Bank's removal was not timely. The Bank recognized its notice of removal may not have been filed within the timeframe allotted by Rule 9027 and so filed a Motion for Extension of Time for Filing Notice of Removal (Bank AP Doc. 2) pursuant to Fed. R. Bankr. P. 9006(b)(1), which provides that the court may enlarge the period during which an act is to be done under the rules, where the failure to act was the result of excusable neglect. The Bank correctly stated that it was not scheduled as a creditor by the Debtor and thus did not learn of the Debtor's bankruptcy case until the Trustee served the Bank with his complaint, and promptly thereafter the Bank filed the notice of removal.

---

[26] Fed .R. Civ. P. 8(c)(2), made applicable to adversary proceedings by Fed. R. Bankr. P. 7008, provides that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."

[27] Section 1334(b) of title 28 provides that ". . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." And § 1452(a) provides, "A party may remove any claim or cause of action in a civil action . . . to the district court . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

Based on these uncontested facts, there was no neglect on the Bank's part, and the court found that the Bank's request for an extension of time should be granted,[28] and the removal deemed timely.[29] For these reasons, the court entered an order granting the Bank's Motion for Extension of Time following the hearing on November 19, 2020. (Bank AP Doc. 24.) Even though the timing of the removal has been addressed in the Bank's favor, Dortha's motion seeking remand or abstention is due to be granted on other grounds.

Before removal, the Bank attempted, unsuccessfully, to add the Debtor as a defendant to the 2016 Lawsuit, and when the 2016 Lawsuit was removed there were no outstanding claims against the Debtor or his alleged interest in the Property. The only claims remaining in the 2016 Lawsuit were Dortha's counterclaims against the Bank for slander of title and outrage, both in personam tort claims. Regardless of the success or failure of Dortha's counterclaims, the Debtor's estate will not be affected by the outcome of the 2016 Lawsuit and, unless terminated by this court, the automatic stay prohibits the reinstatement of the Bank's claims against the Debtor or the estate's interest, if any, in the Property. Inasmuch as the outstanding claims in the 2016 Lawsuit did not arise under the Code or in the Debtor's case, and they are not related to the Debtor's case

---

[28] If the court may grant an extension based on the Bank's excusable neglect, it certainly may do so when there was no neglect attributed to the Bank. If there was neglect, hypothetically it was the Debtor's due to his failure to schedule his possible interest in the Property, and under the circumstances in this case, his neglect would be excusable.

[29] When the Debtor filed his bankruptcy petition, he was not then a defendant in the 2016 Lawsuit, but the Bank was pursuing an appeal before the Alabama Supreme Court to reverse an order by the Circuit Court denying the Bank's motion to add the Debtor as a defendant. After the Debtor filed for relief, any further proceedings in that appeal were stayed by Code § 362. (The supreme court entered its order dismissing the Bank's appeal 13 days after the Debtor filed his petition for relief.) No motion seeking stay relief was filed to allow the appeal to proceed, and thus the 30-day period to file a notice of removal under clause (B) of Rule 9027(a)(2) never commenced to run. Accordingly, the removal was timely under Rule 9027(a) without the need for an extension under Rule 9006(b).

under the Eleventh Circuit's definition of related-to, title 11 jurisdiction, this court must follow the mandate of 28 U.S.C. § 1447(c), which requires that an action removed from state court must be remanded when it appears the court lacks subject matter jurisdiction. Thus, Dortha's motion to remand the 2016 Lawsuit is due to be granted.[30]

VI – Supplemental Jurisdiction

The Bank, apparently anticipating this court may find it does not have subject matter jurisdiction over the 2016 Lawsuit and the Bank's counterclaims and crossclaims filed in the Trustee AP (at least to the extent the counterclaims and crossclaims only apply to Dortha), urged the court to retain jurisdiction over those matters pursuant to supplemental jurisdiction expressly granted to district courts under 28 U.S.C. § 1367. The Bank and others have argued that because bankruptcy judges are judicial officers and units of district courts (28 U.S.C. § 151), they too may exercise supplemental jurisdiction over claims that are so related to proceedings within their original bankruptcy jurisdiction that such claims form part of the same case or controversy. But that argument ignores 28 U.S.C. § 157(a) which is the exclusive conduit of all bankruptcy court jurisdiction. Section 157(a) provides that district courts may refer all cases under title 11, and all proceedings arising under title 11 or arising in or related to a case under title 11, to bankruptcy

---

[30] Although the litigation between Dortha and the Bank will return to the Circuit Court, there exists a possible circumstance where this bankruptcy court's core jurisdiction may decide claims between Dortha and the Bank. If the estate is determined to own a half interest in the Property as claimed by the Trustee, and it is further determined that the entirety of the Property should be sold pursuant to Code § 363(h), Dortha and the Bank will no doubt assert conflicting claims to the sale proceeds attributed to the half interest not owned by the estate. The Property's sale under § 363(h) would be a core proceeding under 28 U.S.C. § 157(b)(2)(N), as would the adjudication of who is entitled to the non-estate proceeds. Both arise under the Code and in a case under title 11.

judges but says nothing about referring supplemental claims that do not fall within those specifically defined and limited proceedings. This court recognizes that there are respected judges who have held that supplemental jurisdiction under § 1367 applies to bankruptcy courts, but there are those, like the undersigned, who hold a contrary view.

Section 1367(a) of title 28 U.S.C. allows a district court to exercise supplemental jurisdiction when claims over which the court has original jurisdiction are so related to the other claims in the action—including claims against a party not otherwise subject to the court's jurisdiction—that they form part of the same case or controversy. As mentioned, there is a split of authority on the question of whether supplemental jurisdiction under § 1367 may be exercised by a bankruptcy court whose jurisdiction is limited to those matters referred to it by the district court pursuant to § 157(a):[31]

> There is a conflict among the district courts in the Eleventh Circuit as to whether a bankruptcy court may or may not exercise supplemental jurisdiction under 28 U.S.C. § 1367. The courts in the following cases held or explicitly or impliedly recognized that the grant of supplemental jurisdiction found in 28 U.S.C.A. § 1367 does not extend to the bankruptcy courts (the majority view): *In re Alpha Steel Co., Inc.*, 142 B.R. 465 (M.D. Ala. 1992); *Matter of Romar Intern. Georgia, Inc.*, 198 B.R. 401 (Bankr. M.D. Ga. 1996); and *In re Davis*, 216 B.R. 898 (Bankr. N.D. Ga. 1997). On the other hand, the courts in the following cases either held or explicitly or impliedly recognized that bankruptcy courts have supplemental jurisdiction under 28 U.S.C. § 1367, or applied the rule that bankruptcy courts have supplemental jurisdiction (the minority view): *In re EZ Pay Services, Inc.,* 390 B.R. 421 (Bankr. M.D. Fla. 2007) (recognizing conflict); *In re Anchor Glass Container Corp.,* 325 B.R. 898 (Bankr. M.D. Fla. 2005); *In re Hospitality Ventures/LaVista*, 358 B.R. 462 (Bankr. N.D. Ga. 2007); *In re Feifer Industries*, 141 B.R. 450 (Bankr. N.D. Ga. 1991). *Marshall & Ilsley Trust Co. v. Lapides (In re Transcolor Corp.),* 2007 WL 2916408 (Bankr. D. Md. 2007) contains an excellent summary of the cases in which courts found that the bankruptcy courts may exercise supplement

---

[31] It is interesting that neither *Collier Pamphlet* 2020 ed. nor *Norton Bankruptcy Code* 2019-2020 ed. include § 1367 in their publications which, in addition to title 11, contain statutory provisions related to bankruptcy. They include all other pertinent sections of title 28 concerning bankruptcy jurisdiction. Albeit anecdotal authority, it appears the editors of these quick-reference desk books do not consider supplemental jurisdiction within the realm of matters that may be properly referred to bankruptcy courts under § 157(a).

Case 20-40025-JJR   Doc 41   Filed 01/13/21   Entered 01/13/21 08:47:09   Desc Main
Document   Page 20 of 23

jurisdiction and the cases in which courts found to the contrary. In *In re Transcolor Corp.*, the bankruptcy court declined to exercise supplemental jurisdiction. *See also Allen v. Kuhlman Corp.*, 322 B.R. 280, 284 (S.D. Miss. 2005); *Liberty Mut. Ins. Co. v. Lone Star Inds., Inc.*, 313 B.R. 9, 21 (D. Conn. 2004).

*Talisman Capital Alternative Investments Fund, Ltd. v. Mouttet (In re Mouttet)*, 2020 WL 5993925 at *23 n.30 (S.D. Fla. 2020).

The argument that bankruptcy courts may expand their reach via § 1367 lost much of its traction when the Supreme Court handed down its decision in *Stern v. Marshall*, 564 U.S. 462 (2011). In *Stern,* a chapter 11 debtor filed a counterclaim in her bankruptcy case based on a state law cause of action against a creditor who had filed a proof of claim in the case. Such counterclaims are statutorily described as core proceedings under 28 U.S.C. § 157(b)(2)(C) and bankruptcy courts have statutory authority to enter final orders in core proceedings. 28 U.S.C. § 157(b)(1). However, the Supreme Court held that although the bankruptcy court—an Article I court—had statutory core jurisdiction over the state law counterclaim, it lacked Article III constitutional authority to enter a final order on the counterclaim. Like the counterclaim in *Stern*, Dortha's counterclaims in the 2016 Lawsuit and the Bank's counterclaims and crossclaims against Dortha in the Bank AP, are strictly state, common law, private causes of action, and are outside a bankruptcy court's constitutional authority. Simply stated, Article III of the U.S. Constitution should limit a bankruptcy court from utilizing § 1367 in the same manner it limits the reach of § 157(b). Accordingly, this court will not attempt to exercise supplemental jurisdiction under §1367 over the 2016 Lawsuit or, to the extent they apply only to Dortha, the Bank's counterclaims and crossclaims in the Trustee AP.

VII – Conclusion and Order

In light of the common facts underlying these APs, and the state law that is likely to determine their ultimate outcome, it would better serve judicial economy if one court could adjudicate all the assorted claims, counterclaims, crossclaims, and defenses asserted by the parties. But no court can fabricate subject matter jurisdiction where none exits. The Circuit Court cannot exercise federal bankruptcy jurisdiction and this court cannot extend its jurisdiction beyond that allowed under 28 U.S.C. § 157 and the United States Constitution.

The only remaining claims in the Bank AP—the removed 2016 Lawsuit—are Dortha's counterclaims; there are no claims against the Debtor or his alleged interest in the Property, and none may be asserted so long as the automatic stay of Code § 362(a) remains in effect. There are no claims arising in Debtor's case, or under the Code, or even related to the Debtor's case in the Bank AP; thus the 2016 Lawsuit must be remanded. The Bank's counterclaims and crossclaims asserted in the Trustee AP, to the extent they make claims against Dortha and her alleged interest in the Property, are likewise beyond this court's jurisdiction and are due to be dismissed.

Accordingly, for the reasons stated in this opinion, orders conforming to this opinion will be entered, (i) in the Bank AP granting Dortha's motion (Bank AP Doc. 17) seeking remand of the 2016 Lawsuit, and (ii) in the Trustee AP granting the Trustee's motion (Trustee AP Doc. 22) and Dortha's motion (Trustee AP Doc. 26) seeking dismissal of the Bank's counterclaims and crossclaims to the extent such claims are asserted solely against Dortha but not to the extent they seek an equitable mortgage or lien against the

estate's interest, if any, in the Property or to the extent they should be considered defenses to the Trustee's claims.

Done this 13th day of January 2021.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE

Case 20-40025-JJR    Doc 41    Filed 01/13/21    Entered 01/13/21 08:47:09    Desc Main
Document        Page 23 of 23