UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                                    }
Irvin Randal Karr,                        }          Case No. 20-40655-JJR-7
                                          }
            Debtor.                       }

Rocco J. Leo, as Trustee of the           }
Bankruptcy Estate of Irvin                }
Randal Karr,                              }
                                          }
            Plaintiff,                    }
v.                                        }          AP No. 20-40025-JJR
                                          }
Deutsche Bank National Trust              }
Company, as Trustee under the             }
Pooling and Servicing Agreement           }
dated as of March 1, 2006, GSRPM          }
Mortgage Loan Trust 2006-1; Ocwen         }
Loan Servicing, LLC; and                  }
Dortha Karr,                              }
                                          }
            Defendants.                    }

MEMORANDUM OPINION

Introduction

        To decide this case, the court must apply the real property laws of Alabama and, of course,

the Bankruptcy Code, but as the underlying facts evolved over the past two decades, Murphy's

Law was firmly in control.[1] About 21 years ago, the Debtor and his wife purchased a residence

---

[1] Murphy's Law is "an observation: anything that can go wrong will go wrong." "Murphy's Law." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/Murphy%27s%20Law. Accessed 11 Feb. 2022.

and small acreage in Marshall County, Alabama (the "Property") but unknown to them and the sellers, the deed contained the wrong description of the Property. A few months after the purchase, at the request of the Debtor and his wife, the sellers executed and recorded a second deed—also containing the wrong Property description—that purported to remove the Debtor from the Property's title. However, that second deed was a nullity because it was only signed by the original sellers and was not signed by the Debtor and his wife who were the record owners under the original deed. Ameriquest Mortgage Company ("Ameriquest"), apparently acting under the misconception that the attempt to remove the Debtor from the title was successful, made a loan to the Debtor's wife, and secured the loan with a mortgage on the Property, using the same wrong description. The mortgage identified the Debtor's wife as the sole borrower and mortgagor even though the official record title reflected that she and the Debtor continued to each own a one-half interest as joint tenants. Although the Debtor signed the mortgage, his signature was illegible, his name in legible form did not appear anywhere in the mortgage, and he did not acknowledge the mortgage as required by Alabama law. The mortgage was assigned to a trust controlled by Deutsche Bank (as such trustee, the "Bank").[2] Eventually, the description of the Property was corrected in a state court lawsuit, and thereafter the mortgage was foreclosed. According to the foreclosure deed, only the wife's interest in the Property was sold at the foreclosure sale; it did not mention the Debtor who continued to own a one-half interest. The Bank's credit bid at the sale was for the entire mortgage indebtedness, satisfying the debt entirely and leaving no balance owing. Thereafter the Debtor filed chapter 7 bankruptcy and, contrary to the Bank's position, the

---

[2] Deutsche Bank National Trust Company appears in this adversary proceeding in its capacity as Trustee Under the Pooling and Servicing Agreement Dated as of March 1, 2006, GSRPM Mortgage Loan Trust 2006-1.

trustee claimed the Debtor's one-half interest in the Property was now owned by the estate and unencumbered by the Bank's mortgage.

<u>Parties' Claims and Summary of Conclusions</u>

The Debtor did not schedule any real property as an asset when he filed for chapter 7 bankruptcy relief. However, the chapter 7 trustee (the "Trustee") discovered that the official county real estate records revealed the Debtor owned a one-half interest in the Property, which the Trustee proposed to sell for the benefit of the Debtor's unsecured creditors. The Trustee argued that the Debtor's interest was never encumbered by the Bank's mortgage, but his strongest argument was that even if it were so encumbered, the foreclosure of the one-half interest that was vested in the Debtor's wife, Dortha Karr ("Dortha" and together with the Debtor, the "Karrs"), satisfied the mortgage when the Bank bid the full amount of the secured indebtedness at the foreclosure sale. Accordingly, pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure,[3] the Trustee asked the court to declare the Debtor's one-half interest in the Property was unencumbered by the mortgage and was property of the estate under section 541 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.,* and herein the "Code").[4] The Trustee made no claim to the other one-half interest mortgaged by Dortha and purportedly sold to the Bank at foreclosure, but he does seek authority to conduct a sale for division of the entire undivided fee title to facilitate

---

[3] Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . ." is an adversary proceeding governed by Part VII of the Fed. R. Bankr. P.

[4] Code § 541(a) provides, in pertinent part, "The commencement of a case . . . creates an estate. Such estate is comprised of . . . all legal or equitable interest of the debtor in property as of the commencement of the case . . . ."

the liquidation of the estate's one-half interest, as allowed by Code § 363(h)(1), as well as for turnover of the Property under Code §542(a), although those issues were not raised on summary judgment.[5]

The Bank contends its mortgage covered both Dortha's and the Debtor's interests in the Property and it acquired both their interests through the pre-bankruptcy foreclosure sale, so the Debtor's interest never became property of the estate. Nonetheless, if it is determined that the Debtor's interest was not covered by the foreclosure sale, the Bank alternatively argued that his interest remained encumbered by the mortgage or, if that argument should fail, the Bank seeks an equitable mortgage or lien against the Debtor's—now the estate's—one-half interest, or to be subrogated to the position of the mortgagee under an earlier mortgage made by the Karrs that was satisfied with proceeds from the 2004 loan made to Dortha by Ameriquest.

The material facts are not in dispute, and the parties filed cross motions for summary judgment. The issues were thoroughly briefed and thereafter the motions were taken under advisement. For the reasons stated below, the court concludes that the Debtor's one-half interest in the Property is now property of the estate, and the Bank has no claim or right to that interest

---

[5] The Trustee further argued that pursuant to Code § 544(a)(3), as a hypothetical bona fide purchaser, he is entitled to avoid the mortgage to the extent it otherwise encumbered the Debtor's interest in the Property. And because the Property was the Karrs' homestead, the Trustee contends that the mortgage was invalid because it did not contain a certification by a notary public or other authorized officer as required by Ala. Code § 6-10-3 (1975) in the form prescribed in Ala. Code § 35-4-29 (1975), certifying that the Debtor acknowledged he was informed of the contents of the mortgage and voluntary signed it. The Trustee's position that the Debtor's interest was never encumbered by the mortgage, or even if it had been, the foreclosure of Dortha's interest satisfied the mortgage, is unequivocally supported by the facts and law. Therefore, consideration of the Trustee's more intricate theories is unnecessary.

under its mortgage or otherwise and is not entitled to an equitable mortgage or lien or to be subrogated to a superior position under a previously satisfied mortgage.

Findings of Fact[6]

Joint Tenants – Wrong Description:

In November 2000, the Karrs believed they were purchasing the Property that would become their homestead[7] from Shane and Susan Wilks (the "Wilks"), who likewise believed they were selling the same Property to the Karrs. The Wilks conveyed the Property to the Karrs as joint

---

[6] While Fed. R. Bankr. P. 7052 expressly provides that the court is not required to state separate findings and conclusions in ruling on motions under Fed. R. Bankr. P. 7056, the court has, nonetheless, set out its findings and conclusions herein. The parties do not disagree on the facts underlying this adversary proceeding, and those facts are confirmed by the deeds, mortgages, state court pleadings and other documents that were submitted by the parties in support of the several motions, and other pleadings filed in this adversary proceeding. The authenticity of those submissions has not been challenged. The parties rely on the same documents to support their respective positions, although they do not agree on what conclusions the court should reach from the facts.

[7] The Property, or at least what the Karrs intended to purchase and the Wilks intended to sell, was located at 785 Hustleville Road, Albertville, Marshall County, Alabama. The original deed from the Wilks to the Karrs described the Property by metes and bounds but described a totally different parcel of property. The error was not discovered until sometime in 2012. The incorrect description was the first in a series of mistakes and oversights that gave rise to the state court litigation discussed later, and eventually led to this adversary proceeding.

As an aside, part of the purchase price was paid from the proceeds of a first-priority purchase-money mortgage made by the Karrs in favor of Long Beach Mortgage Company. The Long Beach mortgage, like the original deed, contained the incorrect description of the Property. Another portion of the purchase price was paid pursuant to a second-priority purchase-money mortgage made by the Karrs in favor of the Wilks. That second mortgage, unlike the original deed and Long Beach mortgage, contained the correct description of the Property. The Long Beach mortgage and mortgage made in favor of the Wilks were both paid in full and released and have no bearing on the issues discussed in this opinion other than to show the ubiquity of errors that plagued the transactions associated with the Property.

tenants with rights of survivorship.[8]  But the deed from the Wilks to the Karrs contained an incorrect description of the Property--it described a completely different parcel from the one they all intended to be conveyed.  The initial purchase and conveyance between the Wilks and the Karrs as well as the subsequent transactions involving the Property should have been simple, routine, and straightforward, but because of negligence and lack of due diligence, that was not to be.

Inoperative Corrective Deed:

Less than a year after the purchase, the Wilks, at the Karrs' request, attempted to deed the Property (still incorrectly described) solely to Dortha and thereby remove the Debtor from the title. Pursuant to the original deed, which had been recorded, title was vested jointly in the Karrs, but the subsequent deed, styled as a corrective deed (the "First Corrective Deed"), was executed only by the Wilks without the Karrs' signatures and was, therefore, ineffective other than to serve as a harbinger of future problems.[9]

---

[8] For an early history of joint tenancy in Alabama, see generally James J. Robinson, *Recent Decision, Property—Title 47, Section 19, Alabama Code Construed to Allow Common Law Joint Tenancy When Parties Express Their Intent to Create Survivorship.–Nunn v. Keith, [298] Ala. [518], 268 So. 2d 792 (1972)*, 4 Cumberland-Samford L. Rev. 190 (1973).

[9] Because the record title remained vested in the Karrs by virtue of the recorded original deed, the First Corrective Deed executed by the Wilks without the Karrs' signatures did not alter the record title.  In *Gallups v. Kent*, 953 So. 2d 393 (Ala. 2006), with similar facts, the Alabama Supreme Court relied on a decision by the Kansas Supreme Court:

> In *Kirkpartick v. Ault*, 177 Ka. 552, 280 P.2d 637 (1955), as in this case, a deed named a married couple as grantees.  The grantors attempted to use a correction deed to reform the conveyance to name the wife as the sole grantee, stating that "by mistake the words, Margaret Ann Ault and Alfred W. Ault were written instead of the words Margaret Ann Ault . . . ."  The Supreme Court of Kansas held that the correction deed could not divest the husband of his undivided one-half interest in the property.  Quoting 26 C.J.S. *Deeds* § 31, that court stated that "'[w]here the grantor has divested himself of title, although by mistake he has not conveyed the title in the way in which he intended, he cannot b[y] a subsequent conveyance correct his mistake, there being no title remaining in him to convey.'"

2004 Mortgage:

In March 2004, Ameriquest, apparently relying on the inoperative First Corrective Deed that purported to vest title solely in Dortha, made a $317,624 loan to Dortha secured by a mortgage on the Property (the "2004 Mortgage").[10]  Dortha was the sole maker of the promissory note evidencing the loan. The loan proceeds were used to repay an earlier 2002 mortgage loan also made by Ameriquest to the Karrs as well as additional debts owing by one or both of the Karrs.[11]

The 2004 Mortgage defined Dortha as the "Borrower" and "the mortgagor" and the only party who "mortgages, grants and conveys [the Property] to [Ameriquest]. . . with power of sale . . ." without mentioning the Debtor.  Likewise, the certification by the notary public at the end of the 2004 Mortgage only certified that Dortha acknowledged she voluntarily signed the 2004 Mortgage after being informed of its content but did not mention the Debtor.[12]  Dortha's name was

---

*Id.* at 395 (internal citations omitted).

[10] The Property was described, again erroneously, on a schedule attached to the 2004 Mortgage.  Typed at the end of the description is the statement: "SOURCE OF TITLE: BOOK 2188 PAGE 52 (RECORDED 3/15/01)" which is the book, page, and date of the First Corrective Deed's recording.  Whomever was searching the title records for Ameriquest obviously relied on the First Corrective Deed as being effective to drop the Debtor from the title and vest the undivided fee in Dortha. The penultimate page of the 2004 Mortgage recites that it was prepared by Yvette DeFrance, 10600 White Rock Road, Suite 200-10, Rancho Cordova, CA, 95670.

[11] The earlier 2002 Ameriquest mortgage also contained the incorrect description of the Property, but unlike the 2004 Mortgage, it described the Karrs as husband and wife and identified both as borrowers and mortgagors, and both were included in the notary acknowledgement.

[12] Unlike the earlier 2002 Ameriquest mortgage (*see supra* n.11), the 2004 Mortgage did not mention Dortha's marital status as required by Ala. Code § 35-4-73(a), (b) (1975), which provides:

> No deed, contract, or other conveyance of land or any interest therein, whether legal or equitable, shall be accepted for record by the probate judge unless it contains a recitation of the marital status of an individual grantor or vendor . . . . A probate judge shall not be liable in damages or for a penalty for an error or

typed beneath her signature and as mentioned, her full name was typed in the definitions describing her as the "Borrower" who "is the mortgagor under this Security Instrument." There was no mention of the Debtor in the 2004 Mortgage, although his illegible signature was on a signature line below Dortha's. The Debtor's name was not printed or typed, nor did it otherwise appear in legible form anywhere within the 2004 Mortgage. The 2004 Mortgage was eventually assigned to the Bank.

Loan Modification:

By the summer of 2006, the 2004 Mortgage was in default, and the Karrs negotiated with the mortgage servicer for a loan modification ("Loan Modification"). The Loan Modification was dated July 2006 and named only Dortha as the Borrower in its definition of terms, as had the original note and 2004 Mortgage. The Loan Modification was a relatively simple two-page document and addressed the principal balance (apparently capitalizing interest), and modified the interest rate, payments, and maturity to re-amortize the loan. It further provided that the 2004 Mortgage and the original note would "remain unchanged" except as "otherwise specifically provided" and did not purport to change or expand the definition of "Borrower" and made no mention of the Debtor whatsoever. Nonetheless, the Loan Modification was signed in August 2006 by both Dortha (on a line above her typed name) and by the Debtor (on a line with nothing typed below). Each signature was acknowledged before a notary; however, the acknowledgement used by the notary was not in the form required by Alabama law because it did not include a statement by the notary that Dortha and the Debtor had been informed of the contents of the Loan

---

mistake in the performance of his duties under this section if committed in good faith.

Apparently, failure to comply with § 35-4-73 does not affect the validity of the conveyance.

Modification. The Loan Modification was never recorded. Following the Loan Modification, the Karrs continued to have difficulty paying the 2004 Mortgage. They have not made any payments since 2010 and are in default for the April 2008 installment and all payments due thereafter.

State Court Lawsuit:

In 2012, apparently in preparation for foreclosure, Ocwen Loan Servicing, LLC ("Ocwen") entered the waters and managed to muddy them even further. Ocwen filed a lawsuit in the Marshall County, Alabama Circuit Court against the Karrs and the Wilks seeking to reform the Property's description in the 2004 Mortgage (the "Reformation Action"). In its complaint (the "Reformation Complaint"), Ocwen represented that it was the assignee and holder of the 2004 Mortgage. The Bank now contends that Ocwen never was a holder of the 2004 Mortgage but was merely a loan-servicer. Ocwen acknowledged in the Reformation Complaint that "[o]n or about March 4, 2001, a Corrective Warranty Deed was filed purporting to remove Randy Karr's name as grantee from the [original] Transfer Deed and containing the same erroneous legal description, but is *void* as Randy Karr did not join in the deed" (emphasis added). Eventually, Ocwen and the Karrs entered into an agreed court order (the "Reformation Order") that reformed the description attached to the 2004 Mortgage to correctly describe the Property. The Reformation Order was recorded in March 2015 and recited in pertinent part as follows:

1. The [2004] Mortgage which reflects it was entered into by Dortha and Randy Karr to Ameriquest Mortgage Company on March 23, 2004, and recorded in RPB Book 2908, Page 30, in the Probate Judge's Office of Marshall County, Alabama, contains certain scrivener's errors in the legal description attached thereto as "Schedule A." The parties to this litigation all agree there is a scrivener's error in said description of the mortgage.

2. By agreement, it is ordered the [2004] Mortgage is hereby reformed to reflect the correct legal description of the property listed therein by deleting "Schedule A" and replacing it with the "Schedule A" set forth below, to-wit: [followed by the correct metes-and-bounds description].

3. By consenting to the reformation of the [2004] [M]ortgage to reflect [the] correct legal description of the property, the KARR Defendants do not waive

or concede any defense they may have to the validity of the [2004] [M]ortgage in the event of future litigation relating to the [2004] [M]ortgage.

4. This judgment shall be filed of record in the office of the Marshall County Probate Judge.

5. Except as specifically amended by this Order, the [2004] Mortgage remains unchanged.

6. All other claims for alternate relief are dismissed without prejudice. . . .

(Doc. 1, Ex. K.)  Notably, the Reformation Order did not change Dortha's status as the "Borrower" and "mortgagor" under the 2004 Mortgage.  Rather, the Reformation Order confirmed that "[e]xcept as specifically amended by this Order, the [2004] Mortgage remains unchanged."

Second Corrective Deed:

The Reformation Action also named the Wilks as defendants, who originally conveyed the Property (incorrectly described) to the Karrs in November 2000, and who were the grantors in the First Corrective Deed that was an unsuccessful attempt to remove the Debtor from the title.  About the same time the Circuit Court entered the Reformation Order, the Wilks executed another corrective deed (the "Second Corrective Deed").  The Second Corrective Deed was virtually identical to the original deed, except the Second Corrective Deed included the reformed description of the Property as provided in the Reformation Order.[13]  The Second Corrective Deed was prepared by the same attorney who represented Ocwen in the Reformation Action.  It is critical to note that the Second Corrective Deed conveyed the Property (correctly described) to the Karrs as joint tenants, vesting each with an undivided one-half interest, as attempted in the original

---

[13] Furthering the series of unfortunate title events, the Second Corrective Deed was initially recorded in Jefferson County, Alabama rather than Marshall County. This mistake, unlike others, was discovered and corrected.

deed.[14]  The Second Corrective Deed, prepared by Ocwen, made no attempt to vest title solely in

Dortha, thus missing an opportunity to divest the Debtor as had been attempted unsuccessfully via

the First Corrective Deed.[15] By virtue of the Second Corrective Deed and its recordation, the Karrs

for the first time became the joint owners of record of the Property as correctly described.[16]

Foreclosure:

A few months after recording the Reformation Order, the Bank conducted a nonjudicial

foreclosure of the 2004 Mortgage.[17]   The Bank was the successful bidder at the sale with a credit

bid of $614,386.36. Critically, the Bank's bid was for the entire outstanding balance of the debt

secured by the mortgage.  The foreclosure deed identified only Dortha as the "Grantor" and recited

that she had executed the 2004 Mortgage but did not mention the Debtor.  The description of the

---

[14] Apparently, the Wilks were joined as defendants in the Reformation Action since they remained the record owners of the Property as correctly described.  They were voluntarily dismissed from the lawsuit after they executed the Second Corrective Deed.

[15] Remember it was the inoperative First Corrective Deed that was cited as the source of title in the 2004 Mortgage. *See supra* n.10.

[16]  At first glance the Second Corrective Deed may appear to have failed in its attempt to finally vest title to the Property, as correctly described, in the Karrs because, like the First Corrective Deed, it was executed only by the Wilks.  But there was a critical difference.  In *Gallups v. Kent* (*see supra* n. 9), the Alabama Supreme Court expressed its agreement with 23 Am.Jur.2d *Deeds* § 272 (2002) which stated that "[a] mistake in the description of the land conveyed may be corrected by a subsequent deed executed *by the same grantor* for the purpose of correcting the description and confirming in the grantee the title to the land." 953 So. 2d at 394 (emphasis in original).  The First Corrective Deed was an attempt to divest the Debtor of his one-half interest and vest it in Dortha, but without his signature—in effect, an attempted conveyance of the Debtor's title to Dortha.  The Second Corrective Deed was a conveyance to the Karrs without an attempt to divest either's title.  In any event, Alabama law controls, and a deed correcting the description of property, to be effective, may be executed only by the original grantor but a deed that purports to divest title, even if correcting an error, must be executed by the original grantee.  That said, the better practice to correct a description or other defect would be to have all the original parties execute the corrective deed to reflect and confirm their mutual intent.

[17] The Bank's attorney who executed the Foreclosure Deed on its behalf was not the same attorney who represented the Bank's servicer, Ocwen, in the Reformation Action.

Property in the foreclosure deed was as corrected by the Reformation Order; however, the foreclosure deed made no mention of the Reformation Order or the Second Corrective Deed. If one compared the description of the Property in the 2004 Mortgage with that in the foreclosure deed, one would find two different descriptions with no explanation for the discrepancy.

State Court Ejectment Action – Removal and Remand:

In January 2016, after the foreclosure, the Bank sued Dortha in the Marshall County Circuit Court (the "Circuit Court") for ejectment and loss of her statutory right of redemption based on her failure to timely vacate the Property (the "Ejectment Action"). In response, Dortha denied the 2004 Mortgage was valid, denied the 2004 Mortgage was assigned to the Bank, denied the Bank had any interest in the Property, and asserted several counterclaims and affirmative defenses. While the Ejectment Action was pending, the Debtor filed his bankruptcy case and the Bank removed the action to this court. Dortha filed a motion for remand and abstention, and because the claims and counterclaims in the Ejectment Action were strictly between Dortha and the Bank, and will have no conceivable effect on the estate,[18] Dortha's motion was granted, and the Ejectment Action was remanded and remains pending in the Circuit Court.[19]

## Jurisdiction

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. Determining the extent of the estate's interest in property, the authority of the Trustee to dispose of such interest, as well as determining the extent, validity, and

---

[18] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990).

[19] *See* Doc. 42 (remanding the removed Ejectment action, AP 20-40029).

priority of liens against the estate's property, are core proceedings under 28 U.S.C. § 157(b)(2). In addition to the core nature of this proceeding as the basis for the court's jurisdiction, the parties before the court have consented to the court's entry of final orders, subject to normal appellate review. (*See* consent to and admission of this court's jurisdiction at Doc. 46, Doc. 96, Doc. 106, and Doc. 110.) Therefore, the court has authority to enter a final order.

<u>Summary Judgment Standard</u>

A motion for summary judgment is controlled by Fed. R. Bankr. P. 7056, which provides that Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings. The court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the merits of a motion for summary judgment, the court's role is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes, if any, raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ.*, 495 F.3d 1306 (11th Cir. 2007). When the court considers a motion for summary judgment it must refrain from deciding any material factual issues. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Brown v. Mendel*, 864 F. Supp. 1138, 1142–43 (M.D. Ala. 1994), *aff'd sub nom. Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996) (internal citations omitted). "Cross-motions must be considered separately, as each movant bears the burden of

establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

<u>Trustee's Assignment Motion</u>

The Trustee filed two motions for summary judgment (Doc. 124, and Doc. 125 as amended by Doc. 140). In the first (the "Assignment Motion," Doc. 124), the Trustee asked the court to rule that an unrecorded assignment (Assignment Motion Ex. D) from "Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement Dated as of March 1, 2006, GSRPM Mortgage Loan Trust 2006-1" to "Deutsche Bank, National Trust Company, as Trustee for GSRPM Mortgage Loan Trust 2006-1" was not an attempt to transfer the 2004 Mortgage between two different trust entities. Instead, the assignment was prepared in error, and there was no second trust involved but merely two nearly identical attempts at describing the same trust for which the Bank serves as trustee, which is the capacity in which the Bank appears in this adversary proceeding. Additionally, the Assignment Motion asked the court to find that the note secured by the 2004 Mortgage was never transferred to Ocwen despite the Lost Note Affidavit and Complaint filed by Ocwen in the Reformation Action.

The Assignment Motion was supported by the unrebutted deposition testimony of Kevin Flannigan, who was a corporate representative of both the Bank and Ocwen. Moreover, at a hearing on the Trustee's motion to amend the complaint held on May 20, 2021, counsel for the Bank stated that Ocwen had been merely a servicer and not an assignee, and further stated that there was no genuine dispute as to the ownership of the 2004 Mortgage, at least between Ocwen

and the Bank. In response to the amended complaint, the Bank also admitted that there was no second trust entity despite the unrecorded assignment giving that appearance. Accordingly, the Bank agreed the Assignment Motion should be granted. (Doc. 138.) Dortha had ample opportunity to come forward with evidence and argument in opposition to the Assignment Motion, but made no response.[20] Similarly, Ocwen filed nothing in response to the cross motions despite having opportunity to do so. Thus, the court has concluded that at the time of its reformation and foreclosure, as is relevant to its determination of whether the 2004 Mortgage was or is a lien against the estate's interest in the Property, the 2004 Mortgage was held by Deutsche Bank National Trust Company, as Trustee Under the Pooling and Servicing Agreement Dated as of March 1, 2006, GSRPM Mortgage Loan Trust 2006-1, and, therefore, the Assignment Motion is due to be granted.

### Trustee's Mortgage Motion

The Trustee's second motion for summary judgment (Doc. 125 as amended by Doc. 140, the "Mortgage Motion") asked the court to declare that the 2004 Mortgage was satisfied when the Bank credit bid its total debt at the foreclosure sale of Dortha's one-half interest, thus mooting any

---

[20] Dortha filed a response (Doc. 139) to the Bank's Motion for Summary Judgment, which "adopt[ed] and incorporate[d] by reference [t]herein the argument, exhibits and authority of [the Trustee] contained in his Motion for Summary Judgment and response to the Motion for Summary Judgment filed by [the Bank]." The court interprets Dortha's response as not addressing the Assignment Motion but rather agreeing with the Trustee's original Mortgage Motion at Doc. 125, prior to its amendment at Doc. 140. The Trustee's Mortgage Motion originally sought a ruling that the 2004 Mortgage was entirely a nullity and void from its inception due to the failure to follow Alabama's homestead mortgage requirements. After the Bank's concession that a one-half interest in the Property was conveyed to the Debtor by virtue of the Second Corrective Deed, the Trustee amended the Mortgage Motion to focus on the satisfaction of the 2004 Mortgage when the Bank bid the entire debt to purchase Dortha's interest at the foreclosure sale. Dortha expressed no position on the Mortgage Motion as amended, and neither agreed nor disputed that the estate is the owner of the Debtor's one-half interest in the Property.

further argument regarding whether the Debtor's interest was covered by the 2004 Mortgage. Alternatively, the Trustee argued the 2004 Mortgage never covered the Debtor's interest in the property and was invalid because his signature was not acknowledged in strict compliance with the homestead mortgage requirements of Ala. Code § 6-10-3 (1975), as well as failing the basic attestation required by Ala. Code § 35-4-20 (1975).[21]  For homestead mortgages, Ala. Code § 6-10-3 (1975) specifically requires:

> No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgements of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgement for individuals prescribed by Section 35-4-29.[22]

To the extent the 2004 Mortgage may be subject to the imposition of equitable remedies to cure these shortcomings, the Trustee argued that the estate's interest cannot be subjected to such

---

[21] As to any deed or mortgage, Ala. Code § 35-4-20 (1975) provides that conveyances for the alienation of land must be in writing and signed, and the signature of the conveying party must be attested with at least one witness when the conveying party writes his or her own name. Ala. Code § 35-4-23 (1975) then provides that the witness requirement may be met by a proper acknowledgement before an authorized officer, such as a notary public.

[22] Ala. Code § 35-4-29 (1975) provides the form of acknowledgement for an individual, on all conveyances and instruments to be made of record as follows:

ACKNOWLEDGMENT FOR INDIVIDUAL
The State of ..........                    )
.......... County                          )
    I (name and style of officer) hereby certify that .......... whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date. Given under my hand this .......... day of .........., A. D. 20.......

    A. B. Judge, etc. (or as the case may be)

Case 20-40025-JJR    Doc 159    Filed 03/07/22    Entered 03/07/22 12:11:24    Desc Main
Document       Page 16 of 27

remedies because he stands in the shoes of a hypothetical bona fide purchaser without notice and a lien creditor as of the petition date under Code § 544(a).[23]

Bank's Opposition and Motion

The Bank opposed the Trustee's Mortgage Motion on numerous grounds and filed its own Motion for Summary Judgment (corrected at Doc. 135, the "Bank Motion"). The Bank conceded that the Debtor owned a one-half interest in the Property before the foreclosure. However, the Trustee and the Bank disagreed regarding the consequences of the foreclosure. Distilled to its essence, the Bank's position was that, despite all its imperfections, at the end of the day, the 2004 Mortgage was sufficient to cover the Debtor's interest in the Property and the foreclosure sale included both Dortha's and the Debtor's interest. In the alternative, the Bank argued that under the facts it was entitled to an equitable mortgage or lien in its favor. However, after having bid its entire debt at the foreclosure sale, the Bank did not explain what debt remained that would be secured by such an equitable mortgage or lien. Nonetheless, failing other remedies, the Bank claimed it should be subrogated to the prior position of the 2002 Ameriquest mortgage that was paid from the proceeds of the 2004 Mortgage loan.

---

[23] The Court agrees with the Trustee's argument that the Debtor's interest in the Property was never encumbered by the 2004 Mortgage, but regardless of the propriety of that conclusion, the foreclosure of Dortha's interest satisfied the 2004 Mortgage in any event. Thus, the Trustee's additional arguments regarding noncompliance with the formal requirements of Alabama statutes for the execution and acknowledgement of mortgages, and invoking Code § 544, are not addressed herein.

17

<u>Analysis and Conclusions</u>

<u>2004 Mortgage Did Not Include the Debtor as a Mortgagor:</u>

A careful reading of the 2004 Mortgage leads to only one conclusion: Dortha was the only mortgagor who "irrevocably mortgages, grants and conveys [the Property] to Lender. . . ." There was simply no mention of the Debtor in any capacity as a mortgagor or grantor, or otherwise. The omission of the Debtor from the 2004 Mortgage apparently occurred because Ameriquest, the Bank's assignor, relied on the inoperative First Corrective Deed and mistakenly assumed Dortha was vested with the undivided fee title.[24] Ocwen, the Bank's mortgage servicer, confirmed in the Reformation Complaint that the First Corrective Deed was "void." Ocwen's attorney prepared the Second Corrective Deed whereby title was vested in the Karrs as joint tenants. Nonetheless, the Reformation Complaint did not seek to reform the 2004 Mortgage beyond correcting the Property's description and whether it was an oversight or intentional, the Reformation Complaint did not mention the omission of the Debtor as a mortgagor under the 2004 Mortgage.

The Bank argued that because the first paragraph of the Reformation Order referred to the 2004 Mortgage as having been "entered into by Dortha and Randy Karr to Ameriquest" the Reformation Order operated to pull the Debtor into the 2004 Mortgagor as a co-mortgagor. But the plain language of the 2004 Mortgage and the Reformation Order do not support that argument. On the contrary, this court cannot infer from that prefatory reference that the Circuit Court intended to expand the express identity of the "Borrower" and "mortgagor" under the 2004 Mortgage to include the Debtor. Instead, the Reformation Order provided that "[b]y consenting to the reformation of the mortgage to reflect the correct legal description of the property, the KARR

---

[24] As mentioned *supra* at n.10, the "Source of Title" at the end of the Property's description attached to the 2004 Mortgage refers to the book, page, and date of recording of the First Corrective Deed.

Defendants do not waive or concede any defense they may have to the validity of the mortgage in the event of future litigation relating to the mortgage. . . ." and "[e]xcept as *specifically* amended by this Order, the mortgage remains unchanged." (emphasis added.) The Reformation Order was intended to correct the description of the Property and nothing more. Although the court concludes the Debtor's interest in the Property was never covered by the 2004 Mortgage and his omission was not altered by the Reformation Order, that conclusion is superfluous when the consequences of the foreclosure of Dortha's interest are considered.

<u>Foreclosure Sale Satisfied the Debt and the Mortgage:</u>

Regardless of whether the Debtor's interest was included under the 2004 Mortgage, only Dortha's interest was auctioned at the foreclosure sale. On the first page of the foreclosure deed, Dortha was identified as the "GRANTOR" and the initial recital paragraph stated that "on March 23, 2004, Dortha Karr, executed a certain mortgage . . . ." Like the 2004 Mortgage, the foreclosure deed never mentioned the Debtor. It is axiomatic that a deed, including a foreclosure deed executed under a power of sale, does not convey title vested in a party who is not identified therein as a grantor.[25] Otherwise, official county real estate records would be useless in determining property ownership. Thus, even if the 2004 Mortgage had covered the Debtor's interest—which the court concludes it did not—the mortgage was extinguished when the Bank bid the entire secured debt in exchange for the conveyance of Dortha's interest at the foreclosure sale.

---

[25] Ala. Code § 35-10-1 (1975) provides in part, "Probate judges shall index foreclosure deeds by the names of the original grantor [i.e., mortgagor] and grantee [i.e., mortgagee] in the mortgage, and also by the names of the grantor and grantee in the foreclosure deeds." Only Dortha was named as the mortgagor in the 2004 Mortgage and Dortha was the only grantor in the Foreclosure Deed.

The principles applicable to extinguishment of mortgages under Alabama law carry the day for the Trustee. "With regard to mortgages, Alabama is a 'title' state, i.e., upon the execution of the mortgage legal title passes to the mortgagee. The mortgagor retains an equity of redemption . . . ." *First Nat'l Bk. of Mobile v. Gilbert Imp. Hardwoods, Inc.*, 398 So. 2d 258, 260 (internal citations omitted). And "[t]he payment or satisfaction of the real property mortgage debt divests the title passing by the mortgage." Alabama Code § 35-10-26 (1975).[26] The purchase of the mortgaged property at a nonjudicial foreclosure sale in exchange for a credit bid that is sufficient to pay the mortgage debt in full ends both the mortgage and the debt. To put it plainly and succinctly, in Alabama, "if there is no debt there is no mortgage." *Jarrett v. Hagedorn*, 185 So. 401, 402 (Ala. 1938) (citations omitted). As the Alabama Supreme Court stated in *Barrentine v. Parker,* 181 So. 263, 265 (Ala. 1938):

> The main right of a mortgagee is to collect his debt, and if necessary to subject the land to sale for that purpose. All other rights are subsidiary to that main one; so that when the debt is paid, the mortgagee has no further rights under the mortgage, and his title acquired by it becomes, ipso facto, divested out of him, section 9026 Code, likewise, all subsidiary rights.

"Furthermore, '[i]n the absence of any statute on the subject, the rule, well-nigh universal, is that, when a debt secured by a mortgage has been paid, the mortgage becomes functus officio, and it cannot be made to stand as security for a new or different debt between the parties, or reissued to a different creditor.'" *Cottingham v. Citizens Bank,* 859 So. 2d 414, 419-20 (Ala. 2003) (quoting *Hammock v. Oakley*, 154 So. 906, 908 (Ala. 1934)).

> In other words, the debt gives life to the lien. *Carpenter v. Longan,* 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872) (holding that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the

---

[26] Alabama Code § 35-10-26 provides that a mortgage is not deemed satisfied when the debt is paid in full if there is an on-going obligation for the mortgagee to make future advances of credit. There was no future advance obligation under the 2004 Mortgage.

note carries the mortgage with it, while an assignment of the latter alone is a nullity."); *see also Orman v. North Alabama Assets Co.,* 204 F. 289, 293 (1913).

*Pilot v. Alesco Preferred Funding XV, Ltd.* (*In re First Baldwin Bancshares, Inc.)*, No. 13-00563, 2013 WL 5429844, at *8 (Bankr. S.D. Ala. 2013), *aff'd* No. CIV.A. 13-0628-WS-M, 2014 WL 1900668 (S.D. Ala. 2014).

Once the debt secured by the 2004 Mortgage was satisfied (which happened at foreclosure with the Bank's credit bid in exchange for Dortha's undivided one-half interest), the 2004 Mortgage was no longer a mortgage. Even if the Debtor had been a mortgagor, he was a mortgagor no longer when the gavel fell on the foreclosure sale of Dortha's interest. At that moment, the debt was satisfied in full and the mortgage ceased. The Debtor's interest in the Property entered the estate free and clear of the 2004 Mortgage, even if it had originally been encumbered thereby.

In *Simpson v. Coosa Valley Prod. Credit Ass'n*, 495 So. 2d 1029 (Ala. 1986), a lender (Coosa Valley) hired an attorney (Simpson) to certify title to particular real estate against which the lender wanted to take a mortgage to secure a loan to its customer. The attorney had included an exception for the life estate held by the customer's mother in his original opinion and title certificate regarding the property, and a few months later mistakenly notified the lender by letter that all exceptions in the prior title opinion had been removed by virtue of a deed from the mother to the customer. However, the attorney was mistaken. The deed that the attorney prepared, which was supposed to transfer the life estate interest from the mother to the customer, still reserved the life estate so that what the customer owned, and what the customer mortgaged, was only the remainder interest rather than the full fee. The lender made the loan based on the attorney's erroneous letter clearing the exceptions in the opinion, and eventually foreclosed.

The opining attorney's mistake was caught prior to foreclosure, and the foreclosure ads correctly described the property, and correctly described the property interest of the customer

being foreclosed as being a remainder interest, subject to the mother's life estate. The lender purchased the remainder interest in the property at the foreclosure sale and bid its entire debt plus interest and expenses. It then sued the opining attorney for damages resulting from its inability to sell the foreclosed remainder interest for the price that the full fee would have brought. The trial court agreed and assessed damages for the difference in value against the attorney. The supreme court reversed on appeal because the lender could show no damages. Its debt was fully satisfied by the credit bid of the entire amount owing in exchange for the interest its customer had mortgaged, with the lender having had full knowledge of the interest it noticed, foreclosed, and purchased:

> In *Aetna Ins. Co. v. Baldwin County Building & Loan Ass'n,* 231 Ala. 102, 163 So. 604 (1935), the Court noted:
>
>> "It is a fixed principle that when a mortgagee forecloses his mortgage, and at the sale the property brings, and he collects the full amount of his debt, he is no longer a creditor, but his debt is paid. This is so when he buys at the sale, with due authority, bidding the full amount of his debt. He is then the owner of the property, and not a creditor. There is in the former owner only a statutory right, which is not a property ownership. *He has collected his debt as effectually as if another had bought the property and paid him the full amount as purchase money, or if the debtor had paid him in cash of his own accord. Alford v. Southern B. & L. Ass'n,* 228 Ala. 412, 153 So. 864; *Bank of New Brockton v. Dunnavant,* 204 Ala. 636, 87 So. 105; *Jones v. Meriwether,* 203 Ala. 155, 82 So. 185; *Harris v. Miller,* 71 Ala. 26; *Allison v. Cody,* 206 Ala. 88, 89 So. 238.
>>
>> "After the foreclosure, he can only collect the balance due on his debt, if any. *Aetna Ins. Co. v. Hann,* 196 Ala. 234 (8), 72 So. 48." (emphasis added.)
>
> By purchasing the property at the foreclosure sale, Coosa Valley satisfied the debt owed by Adams as effectually as if another had purchased the property at the sale and paid the full amount as purchase money or if Adams himself had paid the debt of his own accord. Coosa Valley seeks to recover from Simpson on the basis that its security was insufficient to satisfy the debt owed by Adams. However, as stated, that debt has been satisfied. It is indeed regrettable that Coosa Valley could not find a purchaser for the property who was also willing to take it subject to the outstanding life estate. However, Coosa Valley made a conscious decision to

Case 20-40025-JJR   Doc 159   Filed 03/07/22   Entered 03/07/22 12:11:24   Desc Main
Document      Page 22 of 27

> purchase the property at the foreclosure sale, and with full knowledge of the
> outstanding life estate, paid the full amount due on the loan, plus interest and
> expenses. It would appear that a more prudent course of action for Coosa Valley to
> take in this case would have been to purchase the property at the foreclosure sale at
> its fair market value (reflecting the outstanding life estate) and then file suit against
> Simpson to recover the deficiency.

*Simpson*, 495 So. 2d at 1033. If, as the Bank argued, it believed the entire time that it had a valid

mortgage against both Dortha's interest and the Debtor's interest in the Property, it would have

been a "more prudent course of action" to have conducted its foreclosure in accordance with that

belief. But it did not do so. It foreclosed only Dortha's interest in the Property and satisfied its debt

entirely in so doing.[27]

The Bank contends that although it did not mention the Debtor by name, it nonetheless set

out the full legal description of the Property in the Foreclosure Deed which was sufficient to

include the Debtor's interest. That position conflates the metes and bounds *description* of the

Property with the mortgagor's *title* and *interest* in the property. The legal description describes

the Property by its location (the "dirt") but does not determine the nature of the mortgagor's

---

[27] The Bank argues that it did not intend to merge the mortgage and title when it foreclosed as to Dortha, citing the exception to the general rule of merger resulting along with the extinguishment of the mortgage. The exception to the general rule comes into play, for example, when the mortgage is assigned to one who also takes the equitable title, but without the application of funds to cancel or satisfy the original debt secured thereby. *See Bay Minette Prod. Cr. Ass'n v. F. Land Bk.*, 442 So. 2d 47, 49 (Ala. 1983). There are also exceptions when multiple tracts of land are subject to a mortgage but less than all the tracts come into the mortgagee's equitable ownership. No merger may occur in that instance, and the mortgage may still be enforced against the entirety of the land described by the mortgage. *See Boatright v. Fennell*, 104 So. 1, 30 (Ala. 1925). But the facts in the instant case are a far cry from the scenarios in which the doctrine of merger has been withheld from application. Here, the Bank, as the holder of the debt and the mortgage, foreclosed only Dortha's interest in the Property, and extinguished the debt entirely by purchasing her interest (Dortha's interest being an undivided half interest) at the foreclosure sale with its credit bid in the full amount of the debt. The Bank has cited, and the court has found, no authority on point where a mortgagee foreclosed against one of two mortgagors (operating under the Bank's argument that both Dortha and the Debtor were mortgagors), credit bid the entire indebtedness secured by the mortgage, but was found not to have thereby satisfied the debt and extinguished the mortgage.

ownership interest. In part, this is the lesson of the outcome in *Simpson, supra*. The foreclosing mortgagee who credit bids at foreclosure is buying whatever interest the mortgagor holds in the described property—nothing more. The Bank argued that it intended to foreclose on what it thought was a valid mortgage against both Dortha's and the Debtor's interests. But when property is owned by multiple owners with undivided interests, it is the identity of the named mortgagor that is the key to exactly whose interest is being sold and conveyed. For example, the same property may be owned by several co-owners, each holding an undivided interest; foreclosing a mortgage as to one co-owner named in the foreclosure deed will transfer only that co-owner's interest to the purchaser, although the description in the foreclosure deed may describe the entire property. As mentioned previously, it is an elementary principal of real property law that a deed conveys only the title vested in a named grantor. Otherwise, official real estate records would be useless and chaos would result.[28] If there is any area of the law where certainty and clarity are necessary, and inference rejected, it is the law governing real property titles.

The Bank Is Not Entitled to Equitable Relief:

As the facts demonstrate, the court's ruling is based on the legal effect of the foreclosure sale, which is determinative. If the court were to nonetheless consider the equities, it would start by noting that the Bank and its predecessors failed to follow basic but essential requirements prescribed by Alabama law to create a valid mortgage encumbering the Debtor's interest in the Property and to foreclose the same, if that were the intent. Transactions similar to those described herein among the Karrs, the Wilks, Ameriquest, Ocwen, and the Bank occur daily as a matter of

---

[28] *See* Ala. Code § 35-10-1 (1975), quoted in n.25 *supra*.

routine, without being beleaguered by the oversights and mistakes caused here by lack of due diligence.

The one-half interest in the Property conveyed to the Debtor by the Second Corrective Deed—the deed to the Karrs from the Wilks prepared by Ocwen's attorney with the correct description—remained vested in the Debtor when he filed bankruptcy. The foreclosure may have conveyed Dortha's one-half interest to the Bank, but that issue will be decided by the Circuit Court in the remanded Ejectment Action. The Debtor's undivided one-half interest was an interest he held "as of the commencement of the case" and pursuant to Code § 541(a) it became property of the estate. The Bank should not expect this court to impose an equitable remedy to correct a mortgage the Bank has already foreclosed in full satisfaction of its debt, with full knowledge of the state of the title, nor somehow subrogate that now-foreclosed 2004 Mortgage to an earlier mortgage to clean up the chaos that could have been so easily avoided through the exercise of ordinary due diligence.[29]

---

[29] There were multiple problems, some more significant than others, with almost all of the lender-prepared documents: utilizing wrong legal descriptions; reliance on the ineffective First Corrective Deed; failure to list the homestead and marital status of the Karrs; improper acknowledgement forms; recording in the wrong county; ambiguous mortgage assignments; obstruse Second Corrective Deed; foreclosure deed with description that, without explanation, does not match that in the mortgage; and more. The Bank knew the Debtor was a co-owner of an undivided one-half interest because the lawyer who represented Ocwen, the Bank's servicer, prepared the Second Corrective Deed vesting title jointly in the Karrs. A review of the 2004 Mortgage would have revealed the inconsistency of the Second Corrective Deed purporting to vest the Property to the Karrs as joint tenants when only Dortha was named as the mortgagor in the 2004 Mortgage. Likewise, in preparing for the foreclosure sale, a review of the Second Corrective Deed would have revealed that a foreclosure of only Dortha's interest would not cover the Debtor's one-half interest (which had not been mortgaged in the first place). The Bank and its predecessors missed several opportunities to address these issues. Once the errors occurred, whether the Bank or its predecessors could have rectified them is something that will never be known. But the remedial steps that were taken were insufficient.

The Bank relied on *In re Miller,* 320 B.R. 203 (Bankr. N.D. Ala. 2005), a decision from a prior judge in this district and division, as authority for the imposition of an equitable mortgage or lien in its favor. *Miller* involved a creditor's motion seeking stay relief to foreclose its mortgage against a chapter 13 debtor's home—not liquidating property of the estate in a chapter 7 case. The creditor's motion was granted, but the judge took the opportunity through dicta to predict the possible outcome of an adversary proceeding in which the same chapter 13 debtor sought to rescind the creditor's admittedly insufficiently notarized mortgage. The court projected that its ruling in the adversary proceeding would award the creditor an equitable mortgage or lien notwithstanding the defective notary acknowledgement. Relying on the guidance of similar situations under the federal Truth in Lending Act as well as equitable principles under Alabama law and in general, the court further predicted that it would require the chapter 13 debtor to refund the loan proceeds as a condition to vacating the equitable mortgage created by the flawed documentation. Unlike the facts in the instant case, the debtor in *Miller* signed the note and was purportedly liable on the debt at issue, there was no allegation that the express terms of the mortgage failed to convey the debtor's and her husband's interest in the property, and there had been no foreclosure of one spouse's interest in full satisfaction of the debt which had been owed entirely by that spouse. The Bank has not cited, nor has the court found, any authority that would support subjecting a chapter 7 trustee's interest in property of the estate to a court-imposed equitable remedy to allow a creditor to avoid the consequences of its own negligence. If such a remedy were viable, creditors who were subject to avoidance actions under Code §§ 544 and 547 could be excused from the consequences of their own lack of due diligence.

In summary, even if the legal issue were not determinative, the court would not find any grounds to grant equitable relief to correct lender mistakes that could and should have been avoided

prior to foreclosure. Nonetheless, the question not answered by the Bank is: Exactly what debt would an equitable mortgage or lien, or a mortgage resurrected via subrogation, secure? The answer is that after the foreclosure, no debt remained—Dortha's debt was paid in full at the foreclosure sale and the Bank is not a creditor in the Debtor's bankruptcy case.

Accordingly, the court concludes that the Bank's Motion (Doc. 135) is due to be DENIED, and the Trustee's Assignment Motion (Doc. 124) and Mortgage Motion (Doc. 140) are due to be GRANTED. A separate Order will be entered in conformity herewith. Under Fed. R. Civ. P. 54(b), which applies in this proceeding per Fed. R. Bankr. P. 7054(a), there being no just reason for delay, the court will direct the entry of the separate order as a final and immediately appealable judgment as to the matters determined in this Opinion and the conforming Order. *See Dzikowski v. Boomer's Sports & Rec. Center, Inc. (In re Boca Arena, Inc.)*, 184 F.3d 1285 (11th Cir. 1999).[30]

So done this 7th day of March 2022.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE

---

[30] The Trustee's motions for summary judgment did not address his request for authority to conduct a sale for division of the undivided fee title pursuant to Code § 363(b)(1) and (h). If such a sale is later authorized and conducted, it appears the net proceeds attributed to the one-half interest owned by either Dortha or the Bank should be paid via interpleader to the Marshall County Circuit Court in the remanded action (AP 20-40029).